## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GREGGORY B. OWINGS,

        *Plaintiff,*

vs.

       Case No. 15-CV-1108-EFM

UNITED OF OMAHA LIFE INSURANCE
COMPANY,

        *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Greggory Owings brings suit against Defendant United of Omaha Life Insurance Company alleging that Defendant has refused to pay Plaintiff the proper monthly amount of long-term disability benefits.  Defendant seeks summary judgment asserting that the benefit amount is proper.  Plaintiff requests summary judgment arguing that the monthly amount should be increased by approximately $1,400.  Because the Court finds that Defendant did not abuse its discretion in interpreting the written policy, the Court grants Defendant's Motion for Summary Judgment (Doc. 22) and denies Plaintiff's Motion for Summary Judgment (Doc. 23).

## I.        Factual and Procedural Background[1]

Plaintiff Greggory Owings began working for Grene Vision Group in Wichita in 2001. He was a maintenance director.  As an employee of Grene Vision Group, he was a participant in a welfare benefit plan, which provided long-term disability benefits to qualifying employees. Defendant United of Omaha Life Insurance Company issued the group insurance policy to Grene Vision Group.  The plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

As of Sunday, June 30, 2013, Plaintiff's annual salary at Grene Vision Group was $83,150.00.  On Monday, July 1, 2013, Grene Vision Group told Plaintiff that his title was changing from "Maintenance Director" to "Maintenance Supervisor."  With this change, his salary was reduced from $83,150.00 to $54,995.20 per year.  The effective date of these changes occurred on July 1, 2013.  On that same date, July 1, Plaintiff reported to his employer that he suffered an injury.  He strained his back while moving a surgical chair and cabinet while at work.

Several of the relevant terms of the policy are as follows.

*Disability* and *Disabled* mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which:

a)    during the Elimination Period,[2] You are prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis;

---

[1]  In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

[2]  The Elimination Period is ninety days. The Elimination Period is the only relevant time period for purposes of this motion.

The policy defines "Material Duties" as

> the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified.  In no event will We consider working an average of more than the required Full-Time hours per week in itself to be a part of material duties.  One of the material duties of Your Regular Occupation is the ability to work for an employer on a full-time basis.

"Regular Occupation" is defined as

> the occupation You are routinely performing when Your Disability begins.  Your regular occupation is not limited to Your specific position held with the Policy holder, but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT).  We have the right to substitute or replace the DOT with another service or other information that We determine to be of comparable purpose, with or without notice.  To determine Your regular occupation, We will look at Your occupation at it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.

The policy defines "Basic Monthly Earnings" for salaried employees as "Your gross annual salary from the Policyholder in effect on the day immediately prior to the date on which Your Disability begins."

On July 29, 2013, Plaintiff applied for long-term disability benefits with Defendant by submitting an application for benefits that he completed and signed.  In this application, he stated that his job title was "Facilities Maintenance Supervisor" and that his injury occurred on July 1. He stated that his "last day worked before the disability" was July 2, 2015.  When asked if he was able to work a full day, he said "no," and his response to the question "What is the date you were first unable to work?" was "July 2nd tried to work."

On July 31, 2013, Ms. Bratton submitted the "Employer's Statement" portion of the long-term disability application.  In the Employer's Statement, Bratton stated that the "Date Employee Last Worked" was "07/02/2013" and his "annual salary" was "54,995.20."  By letter dated

October 31, 2013, Defendant informed Plaintiff that his claim for long-term disability benefits had been approved.   In this letter, Defendant stated that it had calculated Plaintiff's "Basic Monthly Earnings" as $4,582.93, based on an annual salary of $54,995.20, which lead to a monthly disability benefit (without offsets) of $2,749.76.   This letter also provided that "[o]ur documentation shows that you became Disabled on July 03, 2013."

On October 3, 2014, an attorney representing Plaintiff wrote a letter to Defendant requesting that the date of disability be adjusted to July 1, 2013. To investigate the claim, Defendant sent an email to Bratton on October 10, 2014, asking (1) the "last day [Plaintiff] worked," and (2) for a copy of "all time sheets" from June 1, 2013, to then.   Bratton responded by email on the same day stating that Plaintiff's "last day at work was July 1, 2013" and that his employment ended on October 8, 2013. In this email, Bratton stated that there were no timesheets available because Plaintiff's position was "exempt."

On November 10, 2014, Defendant sent another email to Bratton.   In this email, Defendant pointed out that in the short-term and long-term disability applications, Grene Vision Group had reported the last day worked as July 2, 2013, and Defendant asked for clarification. In response, on November 14, 2014,  Bratton stated that "July 2, 2013" was Plaintiff's last day worked and that the July 1, 2013 date was incorrect.   Bratton also stated that although Grene Vision Group did not have records to verify what time he left work on his last day worked, it could verify that he received full pay for July 2, 2013, and that Plaintiff's salary effective July 1, 2013, was $54,995.20.[3]

---

[3] Plaintiff attempts to controvert several facts, but these facts are in the Pretrial Order. In addition, Plaintiff then cites to the same fact (and the Pretrial Order) in his own Motion for Summary Judgment.

By letter dated November 28, 2014, Defendant denied Plaintiff's request to adjust Plaintiff's disability date for the reasons stated in the letter.  The letter stated that based on the information, Plaintiff's last day worked was July 2, 2013, and thus his Disability date was July 3, 2013.  The letter also stated that even if Plaintiff's last day of work did occur on July 1, 2013, the date of Disability would be July 2, 2013.  Thus, Defendant stated that there would be no change in the amount of benefits as Plaintiff's salary on July 1 was the same as his salary on July 2.

On January 6, 2015, Plaintiff's attorney sent a letter appealing Defendant's decision regarding the date of disability.  In this letter, Plaintiff stated that immediately after suffering his workplace injury on July 1, 2013, Plaintiff "was no longer physically able to perform any of the material duties of his regular occupation."  Plaintiff also stated that he called his employer on July 2, 2013, and "notified them that he still had his company-provided cell phone and that his employer needed to get someone to respond to all work related messages directed to him."  In Plaintiff's letter, he noted that Bratton initially reported his last day worked as July 1 and then changed it to July 2.  He stated that this "discrepancy" was due to Plaintiff calling Bratton and advising her that he had possession of a company-provided cell phone.  Plaintiff also stated that although he was "never on the company's premises because of his physical incapacity nor did he perform any work" on July 2, Grene Vision Group "complied with wage and hour laws" by paying Plaintiff for that day.

By letter dated February 9, 2015, Defendant denied the appeal and stated that it determined Plaintiff's last day worked was July 2, 2013, based on the information provided. Plaintiff then filed suit alleging that Defendant refused to pay him long-term disability benefits in accordance with the policy.  Defendant now seeks summary judgment on the basis that Plaintiff

is receiving the correct amount of monthly benefits.  Plaintiff also seeks summary judgment asserting that he is entitled to $1,407.24 more in monthly benefits.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6]  If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

---

[4] Fed. R. Civ. P. 56(c).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[7] *Id*. (citing Fed. R. Civ. P. 56(e)).

[8] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

Defendant cites to several cases that because this is an ERISA case and the parties have filed cross-motions for summary judgment that the usual summary judgment inferences are inapplicable to the non-moving party.[10] In those cases, however, both parties moved for summary judgment *and* stipulated that no trial was necessary.  Here, the parties have not stipulated that a trial is unnecessary and instead requested a one-day bench trial should the issue not be resolved on summary judgment.  Thus, the Court will apply the usual summary judgment standard.

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[11]  Each party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[12]  Each motion will be considered separately.[13]  To the extent the cross-motions overlap, however, the court may address the legal arguments together.[14]  Finally, summary judgment is not a "disfavored procedural shortcut," but is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

---

[10] *See LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (stating that "the non-moving party is not entitled to the usual inferences in its favor"); *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013) (same).

[11] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[12] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381-82 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

[13] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[14] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

[15] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1) (internal quotation marks and citation omitted).

## III.    Analysis

### A.    Standard of Review

A district court reviews a denial of benefits under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[16]  If the plan administrator has discretion to determine eligibility for benefits and to construe plan terms, then the court reviews the administrator's actions under a "*deferential standard* of review."[17]  Under this standard, a court reviews the administrator's decision for an abuse of discretion.[18]  The plan in this case gives Defendant full discretion and authority to determine eligibility for benefits and construe the plan terms.  Therefore, the Court will apply the abuse of discretion standard.

The abuse of discretion standard and arbitrary and capricious standard are interchangeable in this context, and thus, the Tenth Circuit applies the arbitrary and capricious standard to the plan administrator's determination.[19]  Under this standard, "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[20]  The decision of the plan administrator will be upheld "so long as it is predicated on a reasoned basis," and "there is no requirement that the basis relied upon be the only logical one or even the

---

[16] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

[17] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (citation omitted).

[18] *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012).

[19] *Id.*

[20] *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (quotation marks and citation omitted).

superlative one."[21]   The Court looks for "substantial evidence" in the record to support the administrator's conclusion.[22]   Substantial evidence is "more than a scintilla but less than a preponderance."[23]   "The substantiality of the evidence must be evaluated against the backdrop of the administrative record as a whole."[24]

A court's review under the arbitrary and capricious standard is influenced by an inherent conflict of interest when the claims administrator acts in the dual role of evaluator and payor of the claim.[25] When this occurs, the Tenth Circuit applies "a combination-of-factors" method of review "that allows judges to take account of several different, often case-specific, factors, reaching a result by weighing all together."[26]   A conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy."[27]

## B.    Review of Defendant's Determination

The Court must first consider Defendant's alleged conflict of interest because Defendant acts in the dual role of both the administrator and the payor of claims.  Plaintiff briefly argues that an obvious conflict of interest exists because Defendant blindly accepted Plaintiff's

---

[21] *Id*. at 1134 (internal quotation marks and citations omitted).

[22] *Berges*, 704 F. Supp. 2d at 1175.

[23] *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (internal quotation marks and citation omitted).

[24] *Berges*, 704 F. Supp. 2d at 1175 (internal quotation marks and citation omitted).

[25] *Glenn*, 554 U.S. at 112.

[26] *Holcomb v. Unum Life Ins. Co.*, 578 F.3d 1187, 1193 (10th Cir. 2009) (internal quotation marks and alterations omitted) (citing *Glenn*, 554 U.S. at 117).

[27] *Glenn*, 554 U.S. at 117.

employer's statement of Plaintiff's last day worked and saved $1,407.24 a month by using a later date than July 1 to determine Plaintiff's disability.  Plaintiff does not direct the Court to any evidence to support the contention that Defendant blindly accepted Plaintiff's employer's statement. Indeed, the evidence demonstrates that Defendant contacted Plaintiff's employer several times regarding Plaintiff's last day at work because Plaintiff's employer had given Defendant two different dates. Thus, the evidence demonstrates the opposite.  Accordingly, the Court gives minimal weight to Plaintiff's allegation of Defendant's conflict of interest.

The pertinent question in this case is whether Plaintiff was disabled under the terms of the policy on July 1, 2013, or on a later date (July 2 or July 3).  If he was disabled on July 1, 2013, he is entitled to the monthly benefit amount of $4,157.50 because the amount is calculated on Plaintiff's annual salary as of June 30, 2013, which was $83,150.00.  If he was disabled on July 2 or later, he is entitled to the monthly benefit amount of $2,749.76, based on his annual salary of $54,995.20, which began on July 1, 2013.  The parties disagree on the date that Plaintiff became disabled.  Defendant contends that it is July 3, or at the earliest, July 2.  Plaintiff asserts that it is July 1.

The policy language governs, and the Court must look to that language.  As noted above, however, "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[28]  Thus, the Court must consider whether Defendant reasonably and in good faith interpreted the term "disabled."

The policy provides that

*Disability* and *Disabled* mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which:

---

[28] *Eugene S.,* 663 F.3d at 1130 (internal quotation marks and citation omitted).

>    b)  during the Elimination Period, You are prevented from performing
>        at least one of the Material Duties of Your Regular Occupation on
>        a part-time or full-time basis.

Defendant reasoned that both Plaintiff and Plaintiff's employer informed it that Plaintiff's last day worked was July 2.  Defendant then determined that Plaintiff's disability began on July 3 because that was the first day he was prevented from performing the material duties of his occupation on either a part-time or full-time basis.  Thus, Defendant used Plaintiff's salary of $54,995.20 on July 2 as the relevant monthly earnings.  As Defendant notes, the policy provides that Defendant, in making its decision, is entitled to "rely on the accuracy and completeness of any information furnished by the [Employer] or any third party."  As both Plaintiff and Plaintiff's employer provided information that July 2 was the last day worked, the Court concludes that Defendant's interpretation that Plaintiff became disabled under the terms of the policy on July 3 both reasonable and in good faith.

After approximately one year of paying out benefits on this basis, Plaintiff, through an attorney, contacted Defendant and requested an adjustment to the date of disability.  He sought the disability date of July 1 because he asserted that he was injured on that date and thus became disabled on July 1.  Plaintiff also stated that he never returned to work following the July 1, 2013, injury.

After Defendant requested and received more information from Plaintiff's employer, Defendant determined that July 3 remained the appropriate date.  In addition, however, Defendant determined that even if Plaintiff was prevented from performing one of the material duties of his job on either a part-time or full-time basis on July 2, Plaintiff's monthly benefit amount would not change.  Defendant determined that Plaintiff could work and did work, on at

least a part-time basis on July 1, and thus his disability could not begin on July 1.  At the earliest, Plaintiff's disability date would be July 2.  Because Plaintiff's salary was the same on July 1 and July 2, no adjustment to the amount of benefits was necessary.

Again, the Court concludes that Defendant's interpretation is reasonable and made in good faith.  Defendant requested additional information and conducted a further investigation into Plaintiff's claim that he was disabled on an earlier date.  The policy provides that "disability" requires that an individual be "prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis."  There was no evidence that Plaintiff could not perform one of the material duties of his occupation on July 1 on a part-time or full-time basis.  Indeed, the evidence seems to suggest that he performed his duties on July 2.  Even if he was prevented from performing these duties on July 2, the evidence shows that under the terms of the policy, he was not disabled on July 1.

Plaintiff argues that Defendant has constructed the justification that Plaintiff was not disabled until he stopped working.  The Court disagrees.  The policy definition of "disability" specifically requires the prevention of performing at least one of the job duties on a part-time or full-time basis.  Thus, the policy requires an interruption of work due to a disability.  Plaintiff's argument is that he was disabled as soon as he was injured.  An "injury," however, does not equate to a "disability" under the terms of the policy.  The Court finds that Defendant's interpretation was not arbitrary or capricious.  Accordingly, Plaintiff is not entitled to a higher monthly benefit amount.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 23) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 27th day of April, 2016.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE